**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**JOHN DOE,**

          **Plaintiff,**

    **v.**

**THE UNIVERSITY OF CHICAGO,**

          **Defendant.**

)
)
)  **CIVIL CASE NO.**
)
)  **JUDGE**
)
)
)
)

---

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

---

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, plaintiff John Doe[1] ("Plaintiff"
or "John"), by and through undersigned counsel, hereby files this Motion for a Temporary
Restraining Order and Preliminary Injunction (the "Motion") against defendant The University of
Chicago ("Defendant" or the "University").

Plaintiff easily meets his burden to support the grant of both a temporary restraining order
and preliminary injunction in this case. John will be irreparably harmed if he is forced to leave his
dormitory with no alternative housing accommodation in the middle of midterm examinations.

John notes that he is a complainant in a Title IX matter, and even Title IX respondents are
only subject to removal from on-campus housing "on an emergency basis" and only after the
school "undertakes an individualized safety and risk analysis, determines that an immediate threat
to the physical health or safety of any student or other individual arising from the allegations of

---

[1] Along with his Complaint and this Motion, John files a Motion to Proceed Under Pseudonym.

sexual harassment justifies removal, and provides the respondent with notice and an opportunity to challenge the decision immediately[.]" 34 C.F.R. §§ 106.44(c)-(d). John has been provided no such consideration. For this and other reasons more fully set forth below, Plaintiff respectfully requests that the Court grant the Motion. The grounds for the Motion are more fully set forth in the accompanying Memorandum in Support and Plaintiff's Verified Complaint, which are both incorporated by reference as if fully rewritten herein.

Respectfully submitted,

**LAW OFFICES OF STEVEN H. FINE**

*/s/ Steven H. Fine*
STEVEN H. FINE
53 W. Jackson Blvd., Suite 1215
Chicago, Illinois 60604-3631
Telephone: (312) 922-0855
steve@sfinelaw.com
ARDC 6224908

**KOHRMAN JACKSON & KRANTZ LLP**

SUSAN C. STONE (OH 64445)*
KRISTINA W. SUPLER (OH 80609)*
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com
*Pending motion for admission *pro hac vice*

*Counsel for Plaintiff John Doe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL CASE NO.** |
| | ) | |
| **v.** | ) | **JUDGE** |
| | ) | |
| **THE UNIVERSITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

## I.     INTRODUCTION

John Doe ("John" or "Plaintiff") is a senior at The University of Chicago ("Defendant" or

the "University"). This case arises from the Defendant's failure to investigate and address ongoing

sexuality-based harassment within its dormatories, committed by University student, Student 1,[2]

both in the form of both sexual orientation discrimination and sexual harassment.

As more fully set forth in John's Verified Complaint filed concurrently with this Motion,

the University was complicit in effectuating harassment and retaliation by Student 1 through its

decision to remove John from his dormitory. Student 1 had engaged in a pattern of harassment and

Title IX retaliation against John, culminating in falsified reports of violence to the University's

---

[2] Students' names have been omitted from this Motion and the Verified Complaint filed
concurrently with this Motion to protect the privacy of those students. The object of the Complaint
as well as this Motion is to allow John to remain in his University housing and to obtain relief from
the University, rather than to cause embarrassment or to obtain relief from any other student.

1

housing administrators. The University's failure to investigate or address the underlying Title IX issues has resulted in the premature, wrongful, and unlawful decision to remove John from his dormitory. Plaintiff seeks this emergency relief to prevent the University from removing him from his on-campus dormitory and turning him out onto the street in the middle of midterm examinations and without alternative housing accommodations.

## II.  FACTS AND BACKGROUND

John is an exceptionally bright student with no disciplinary history during his time as a student at the University. Starting at least as early as February of 2022, John began experiencing sexuality-based harassment by fellow student Student 1, a fellow resident within his dormitory complex. Student 1 harassed John based on his sexuality, calling him "f*g" and "f*ggot" as well as making horrible statements and insinuations that John was going to "rape" Student 1 due to his sexuality. In harassing John, Student 1 drew on longstanding hateful and harmful stereotypes of gay men portrayed as sexual predators.

On the evening of September 29-30, 2022, John had attended a party and consumed a few light beers. He was walking back to his dormitory with friends, Student 3 and Student 2. John had work to complete in the morning, as well as class to attend, so he had planned to have a mild evening. John and Student 2 passed Student 4 on their way toward Student 2's dorm. Student 4 lived in the same dormitory that Student 2 had lived in the previous year, so Student 2 expressed interest in seeing how Student 4 had the room set up. Student 4 invited Student 2 and John inside and offered them a snack. While Student 2, Student 4, and John were talking, Student 1 came out of a side bedroom. John embraced Student 1, slinging an arm around his upper neck and shoulders in a "bro hug" that was a common greeting based on their prior interactions.

John and Student 1 had a complicated history. At times, they were friendly, and John would attempt to "start fresh" with Student 1 between being subjected to bouts of harassment by Student 1. When the two saw each other early in the new academic year, after not interacting for several months, John wanted to again start over in their relationship. After Student 1 joined the conversation, Student 2 mentioned Student 1's history of using homophobic and racial slurs. Student 1 and Student 2 then began verbally arguing. John remained back and stood away from Student 1 and Student 2, only participating in the discussion to express agreement that Student 1 had behaved inappropriately in the past. As Student 2 turned to leave, he stated, "if you call me a f*ggot again, I'll break your nose." Student 2 then stated to Student 1 that he and John planned to file a Title IX complaint against Student 1 based on his prior pattern of sexuality-based harassment.

On or around October 1, 2022, John received notice that he was required to meet with representatives of University housing regarding an unspecified complaint against him. John later deduced that Student 1 had filed a housing complaint falsely alleging physical violence as a method of preempting John's Title IX complaint. John initiated reports to several University personnel regarding his experience of harassment and retaliation by Student 1 in connection with the housing complaint. John did not receive notice of the housing conduct allegations against him until he received an outcome letter on October 24, 2022, stating that he was to be removed from his dormitory by October 31, 2022. John appealed the decision, explaining Student 1's retaliatory motive and the prior pattern of harassment and retaliation. John's appeal was denied, and he is currently set to be removed from his dormitory on November 7, 2022, by 3:00 PM.

## III.  LAW AND ARGUMENT

In the absence of injunctive relief, Plaintiff will be denied access to his on-campus housing accommodation and will be left out on the streets of Chicago. This circumstance is likely to cause

irreparable harm, not only by leaving Plaintiff unhoused, but also by disrupting Plaintiff's ongoing midterm examinations at a critical time in his academic career. Plaintiff is an exemplary student, earning a 4.0 GPA just this past semester. Plaintiff thus faces imminent risk of harm to both his physical person and to his academic performance and related future academic and employment opportunities if he is denied a temporary restraining order permitting him to remain in his current housing accommodation.

### A.    Standard of Review

The same legal standard governs motions for temporary restraining orders and motions for preliminary injunctions.  In order to obtain the temporary restraining order sought in its motion, Plaintiff must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; (3) Plaintiff will suffer irreparable harm which, absent injunctive relief, outweighs any irreparable harm to Defendant if the injunction is granted; and (4) the injunction will not harm the public interest. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).

Courts in the Seventh Circuit employ a sliding scale approach wherein, the greater the likelihood of success on the merits, the less harm the moving party needs to show to obtain an injunction, and vice versa. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *See also Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *see also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992). Here, John demonstrates a risk of significant, imminent, and irreparable harm if he is to be cast out of his dormitory with no alternative housing arrangement in the middle of midterm examinations. Plaintiff's motion for temporary restraining order and preliminary injunction should be granted.

4

B. **Plaintiff is Likely to Succeed on the Merits of Each of his Claims.**

Plaintiff's Motion should be granted because Plaintiff can establish a likelihood of success on the merits of each of his claims.

1. **Plaintiff is Likely to Succeed on the Merits of His Title IX Claims.**

a. *Plaintiff is Likely to Succeed on the Merits of his Discrimination Claims.*

Plaintiff's Motion should be granted because Plaintiff can establish a likelihood of success on his Title IX claims. A Title IX sex discrimination claim requires proof that "(1) the educational institution received federal funding, (2) [the] plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against [the] plaintiff based on gender." *Doe v. Columbia College Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). Defendant is a recipient of federal grants and funding through, at least, receipt of federal financial aid funding, and is subject to the application of Title IX. In removing John from his dormitory housing and related programming, Defendant excluded John from "participation in or denied the benefits of" such a program. In assessing Title IX claims, the "ultimate inquiry must consider the totality of the circumstances." *Doe v. Purdue University*, 928 F.3d 652, 667-68, 670 (7th Cir. 2019). Here, John's circumstances must be contextualized by the history of sexuality-based harassment by Student 1 since at least February of 2022, and his report of Student 1's harassment at least as early as October 6, 2022.

On June 15, 2020, the Supreme Court held in *Bostock v. Clayton County* that sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII) encompasses discrimination on the basis of sexual orientation and transgender status. 140 S. Ct. 1731, 1741, 590 U.S. ___, ___ (2020). Though Title VII and Title IX are two distinct statutes,

their prohibitions against sex discrimination are similar, and Title VII jurisprudence is frequently used as a guide to inform Title IX. *See, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616-17 (4th Cir. 2020) ("Although *Bostock* interprets [Title VII], it guides our evaluation of claims under Title IX."), *as amended* (Aug. 28, 2020), *reh'g en banc denied*, 976 F. 3d 399 (4th Cir. 2020), *cert. denied*, No. 20-1163 (June 28, 2021). Indeed, following the Supreme Court's decision in *Bostock*, several federal courts have reached the same conclusion as to Title IX, holding that Title IX protects students from discrimination on the basis of gender identity and sexuality. *See, e.g., B.P.J. v. W. Virginia State Bd. of Educ.*, No. 2:21-CV-00316, 2021 WL 3081883, at *7 (S.D.W. Va. July 21, 2021); *Koenke v. Saint Joseph's Univ.*, No. CV 19-4731, 2021 WL 75778, at *2 (E.D. Pa. Jan. 8, 2021); *Doe v. Univ. of Scranton*, No. 3:19-CV-01486, 2020 WL 5993766, at *11 n.61 (M.D. Pa. Oct. 9, 2020). This case presents an instance of discrimination on the basis of sexuality, wherein the University has exhibited deliberate indifference to sexuality-based harassment and discrimination, precipitating John's unlawful removal from his dormitory.

Procedural irregularities in the interrelated discplinary, housing, and Title IX processes support an inference that John was subjected to gender- and sexuality-based discrimination. Where "procedural irregularities are sufficiently numerous, lopsided, and/or important, they can sometimes support an inference of sex discrimination." *Doe v. Purdue University*, 928 F.3d, 652, 669; accord, *Doe v. University of Denver*, 1 F.4th 822, 831-34 (10th Cir. 2021). John reported his experience of sexual harassment and retaliation in both his October 6, 2022, communication to Jessica Beaver, as well as in his housing appeal. As a responsible employee, Ms. Beaver was obligated to act upon the information that John shared with her, yet she took no action.

*Davis v. Monroe County Bd. of Ed.*, stands for the proposition that educational institutions violate Title IX by exhibiting deliberate indifference to student-on-student harassment. 526 U.S.

6

629, 642, 143 L. Ed. 2d 839, 119 S. Ct. 1661 (1999). Here, school officials who, "at a minimum ha[ve] authority to institute corrective measures" and who have "actual knowledge of misconduct," may not be "deliberately indifferent" to that misconduct. *Doe v. St. Francis Sch. Dist*., 694 F.3d 869 (7th Cir. 2012). Where Ms. Beaver and other University personnel utterly failed to act to investigate or address John's complaint, John has been the subject of sex and sexuality discrimination.

John also alleges that the failure of the University to address his complaints of harassment and discrimination were based in gender discrimination as compared with the responses to female students' Title IX complaints. Additional discovery into the gender makeup of Title IX complainants, respondents, and the University's actions with regard to each will continue to support and bolster John's claims on this count.

### b. *Plaintiff is likely to succeed on the merits of his retaliation claim.*

Both Title VII of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 permit plaintiffs to bring causes of action for retaliation. *See* 42 U.S.C. § 2000e-3(a) (Title VII); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) (Title IX). In making out a retaliation claim, a plaintiff must produce enough evidence for a reasonable jury to conclude that (1) he engaged in a statutorily protected activity; (2) the institution took a materially adverse action against him; and (3) there existed a but-for causal connection between the two. *Milligan v. Bd. of Trs.*, 686 F.3d 378, 388 (7th Cir. 2012); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013) (causation standard).

The housing complaint against John was filed only after Student 1 learned from Student 2 that Student 2 and John intended to file a Title IX complaint against Student 1. Student 1 raced to make a false conduct report in retaliation for the complaint. John's statutorily-protected activity of

7

reporting a claim of Title IX sexual harassment and retaliation were inextricably involved in the University's assessment of his housing proceeding, and the University utterly failed to investigate or address John's complaints. The University was complicit and eventually participated in Student 1's retaliatory activities by removing John from his dormitory without investigation of his Title IX complaint and in subsequently denying his appeal. The University's complicity in retaliating against John would dissuade a reasonable student from availing himself to the Title IX office's complaint procedures.

John can show that the University took a materially adverse action against him in removing him from his dormitory. Removal from housing is recognized as materially adverse in the manner in which it is addressed in Title IX regulations. Ironically, John is the complainant in a Title IX matter, however, even Title IX respondents are only subject to removal from on-campus housing "on an emergency basis" and the school must "undertake[] an individualized safety and risk analysis, determine [] that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal, and provide[] the respondent with notice and an opportunity to challenge the decision immediately following the removal. 34 C.F.R. §§ 106.44(c)-(d). Thus, the University is likely to be held liable for retaliation in violation of Title IX at trial.

### 2. Plaintiff is Likely to Succeed on the Merits of His Fair Housing Act ("FHA") 42 U.S.C. §§ 3601-3619 Claim.

The Fair Housing Act (the "*FHA*") prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. §3604(b); *Wetzel v. Glen St. Andrew Living Cmty.*, LLC, 901 F.3d 856, 861. Like Title IX, the FHA extends to sexuality-based discrimination as a function of its parallel

8

application with Title VII, outlined above. *See Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856; 2018 U.S. App. LEXIS 24193 (7th Cir. 2018)(holding that a residential facility's deliberate indifference to sexuality-based harassment was a permissible basis for an FHA claim where the facility failed to investigate or address harassment, denying resident's access to the facility). Further, the FHA "makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of…any right granted or protected by section…3604…of this title. 42 U.S.C. §3617; *Id*. Importantly, the FHA "does not evaporate once a person takes possession of her house, condominium, or apartment." *Id*.; *see also Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009).

To prove a hostile housing environment claim under the FHA, plaintiff must show: "1) unwelcome harassment based on a protected characteristic was endured; 2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of the plaintiff's residency, or in the provision of services or facilities; and 3) that there is a basis for imputing liability to the defendant." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, \*859; 2018 U.S. App. LEXIS 24193, \*\*1 (7th Cir. 2018). Here, John experienced a pattern of sexuality-based harassment and discrimination, culminating in a falsified report of violence by Student 1 that was unlawfully acted upon by the University. The University has participated in this sexuality-based retaliation through its removal of John from campus housing without investigating or addressing the underlying harassment. As a result, John has been excluded from his housing accommodation altogether.

### 3. Plaintiff is Likely to Succeed on the Merits of His Breach of Claims.

Plaintiff realizes that injunctive relief is not available as a remedy for his claims based in contract. Plaintiff also points out that he is also likely to succeed on the merits of his contract-

based claims to further demonstrate that the balance of equities weighs strongly in his favor. John has outlined several errors and violations of procedure in both the University's handling of its own housing procedures. A contractual relationship exists between a university and its students. *Raethz v. Aurora Univ.*, 346 Ill. App. 3d 728, 732, 805 N.E.2d 696, 282 Ill. Dec. 77 (2004). The terms of that relationship are set forth in the university's catalogues and bulletins. *Id.* Included in the terms of John's contractual relationship with the University are the University's Title IX and housing policies. Where the University failed to adhere to the terms of its Title IX policies requiring both reporting and investigation of harassment allegations, it has breached its contract. Similarly, where the University failed to provide promised notice and an opportunity to respond to an unfounded housing complaint, it breached its contract pursuant to the housing policies. John is likely to succeed on the merits of his breach of contract claims in relation to the University's violation of its own policies during the housing investigation.

## C. <u>Plaintiff is Likely to Suffer Irreparable Harm in the Absence of Injunctive Relief</u>

Plaintiff must prove that he is likely to suffer irreparable harm in the absence of injunctive relief. Plaintiff will suffer irreparable harm by being removed from his on-campus housing, as well as all Housing & Residence Life halls and dining commons for the rest of the academic year. The Northern District of Georgia has specifically held that "loss of the college campus-living experience is not easily quantifiable; therefore monetary damages are not an adequate remedy at law for that injury." *R.W. v. Bd. of Regents of the Univ. Sys. of Ga.*, 114 F. Supp. 3d 1260, 1287-88 (N.D. Ga. 2015) *citing Crane by Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315 (7th Cir. 1992) (finding high school student had no adequate legal remedy and was entitled to permanent injunction allowing him to compete in state golf tournament, which was unique experience important in the development of golfers, and participation in competitive athletics had

10

emotional and psychological benefits that could not be easily quantified). Here, residence in a college dormitory and use of the dining halls are incredibly important to the overall college experience and serve to aid in the development of emotional and psychological skills that prepare young adults for entry into the workforce. The potential loss of John's experience in on-campus housing cannot be remedied through monetary damages, and it thus represents an irreparable and incompensible harm.

**D.** **The Balance of Equities Tips in Plaintiff's Favor and Injunctive Relief Will Not Cause Harm to Defendant.**

The balance of equities is strongly weighted in John's favor. An order requiring Defendant to allow Plaintiff to continue to have access to on-campus housing at the Snell House of Snell-Hitchock Hall and dining commons will not harm Defendant in the least. John and Student 1 have not had further incident since September 29-30. Further, the students have not interacted since the issuance of the no-contact directive. If anything, the no-contact directive may be strengthened by mandating that each student remain in his specific house within the dormitory hall without traversing into the other's house. Access to the dining hall may be allocated to permit each student to continue to access the facilities without coming into contact with the other.

By contrast, Plaintiff's removal from on-campus housing will impose significant immediate burdens and irreparable harm on Plaintiff because he will have greater difficulty in accessing his classes, faculty, and study space, and will increase Plaintiff's travel time to his classes. This change is bound to cause greater disruption and stress during the critical period of midterm examinations and graduate school applications. Furthermore, Plaintiff is bound to adhere to the no-contact order between Plaintiff and Student 1 to prevent future interactions between the two.

### E.  The Public Interest is Best Served by Granting Injunctive Relief.

The public interest would be furthered by an order of injunctive relief since there is a legitimate cause for concern when an educational institution can be persuaded by an improper and one-sided investigation, at Plaintiff's expense.  Defendant abridged the rights of a student in good standing, who has not violated any conduct rule, academic policy, nor rule of law.

### F.  No Bond Should be Required.

Courts "may before entering a restraining order or a preliminary injunction, require the applicant to give bond in such sum, upon such condition and with such security as may be deemed proper by the court, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Ill. Rev. Stat. 1985, ch. 110, par. 11 -- 103. In this case, no bond should be required. John, as an individual, is reliant on the University for his housing and dining plan and remains under its disciplinary purview. The University faces no imminent risk of harm from John's continued residence in Snell-Hitchcock Hall, which is the *status quo ante* prior to the onset of this dispute. John has had no prior discipline during his time at the University and has been separated from Student 1 through a University-imposed no-contact directive, which has been honored.

## IV.    CONCLUSION

Plaintiff has met the criteria for injunctive relief and is at imminent risk of irreparable harm. For all of the reasons above, he asks this Court to grant his motion for temporary restraining order and preliminary injunction, prohibiting Defendant, during the pendency of this case, from removing Plaintiff from his on-campus housing at the Snell House of Snell-Hitchock Hall,

removing Plaintiff from all Housing & Residence Life halls and dining commons for the remainder

of the academic year.

Respectfully submitted,

**LAW OFFICES OF STEVEN H. FINE**

*/s/ Steven H. Fine*

STEVEN H. FINE
53 W. Jackson Blvd., Suite 1215
Chicago, Illinois 60604-3631
Telephone: (312) 922-0855
steve@sfinelaw.com
ARDC 6224908

**KOHRMAN JACKSON & KRANTZ LLP**

SUSAN C. STONE (OH 64445)*
KRISTINA W. SUPLER (OH 80609)*
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com
*Pending motion for admission *pro hac vice*

*Counsel for Plaintiff John Doe*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of November 2022, I caused a copy of the **Plaintiff's**

**Motion for Temporary Restraining Order and Preliminary Injunction** to be electronically

filed with the Clerk of the United States District Court for the Northern District of Illinois using

the CM/ECF system, which will send notification of such filing to all parties that have appeared

in this action.

                                        */s/ Steven H. Fine*
                                        Steven H. Fine

14